[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband commenced this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown by writ and complaint returnable to this court on February 9, 1993. He also sought joint custody of the couple's minor children, an assignment of the wife's estate pursuant to General Statutes § 46b-81, and other relief, as on file. CT Page 1464-C
The defendant wife admitted all of the allegations of the complaint, and in her cross complaint alleged the irretrievable breakdown of the parties' marriage. She sought a legal separation,[1] custody and support of the minor children, and other relief as on file.
The parties were represented by counsel throughout the proceedings and an attorney was appointed to represent the minor children. The case was referred to family services for investigation and recommendation with respect to visitation; the parties agreed to an order of joint legal custody.
At trial, both parties testified at length. Other witnesses testified, including the family services officer. Financial affidavits, a child support guideline worksheet, and written proposed orders were submitted. A number of documentary materials were introduced into evidence.
The parties successfully completed the Parenting Education Program, as ordered, pursuant to 1993 Public Acts, No. CT Page 1464-D 93-319 (now, General Statutes § 46b-69b).
From the evidence, I find the following facts.
The plaintiff husband, Edward S. Banas, Sr., married the defendant wife, Joann K. Banas, at Norwich, Connecticut, on February 17, 1968. The wife's birth name was Joann Kreger. Both of the parties to this marriage resided continuously in this state for at least one year before the filing date of the complaint, January 27, 1993. The wife has had five children born to her since the date of the marriage, all of whom are issue of the marriage, and two of whom are still minors: Edward S. Banas, Jr., born November 29, 1980; and Ashley Victoria Banas, born November 17, 1983.
Neither party nor the children are recipients of public assistance, all statutory stays have expired, and the court has jurisdiction.
The husband is 48 years of age, a high school graduate with one year of college, and in good health. Shortly after the CT Page 1464-E parties' marriage he became a town police officer, rose to the rank of detective and resigned after about ten years on the force. He began a retail store in Norwich, with the assistance of the wife, selling uniforms for police, sheriffs, etc. This business, which was unincorporated, grew to four stores, one of which closed after eight months' operation. The business was successful for a time, but ultimately closed in 1991, saddling the parties with substantial debts, secured by judgment, tax, and other liens on their real property.
Whether the failure of the business resulted from the wife's disengagement from it, the quality of the husband's management, the diversion of his attention to VFW affairs, or the downturn in general market conditions and the economy is impossible to determine from the evidence.
For the past few years, the plaintiff has been the permittee at a local Veterans of Foreign Wars (VFW) post. He reports earnings of $555[2] per week gross, $424 per week net, from this position. He also receives substantial expense allowances for out-of-state travel and lodging in connection CT Page 1464-F with his unpaid position on the VFW board of directors. In addition, he netted about $1,200 during December, 1994, in a catering business; this income was not reported on his financial affidavit. He held a real estate license since 1988 or 1989, which lapsed in 1994.
The wife is 46 years of age, in good health, except for asthma, a high school graduate and a licensed practical nurse. She holds a current real estate agent's license. She receives $54 per week in net rentals, after expenses, from jointly-owned commercial real estate. The stability of this rental income is problematic because a tenant which pays slightly more than half of the total gross rentals accruing from the premises did not exercise its option to renew and wishes to renegotiate the terms of the lease. The wife reentered her real estate employment, at least on a part-time basis, and has reactivated her license, but has no earnings from that source yet.
The wife has been employed for a major portion of the marriage, mostly on a full-time basis (except for periods of up CT Page 1464-G to six months surrounding her pregnancies) as a licensed practical nurse in nursing homes. From 1978, she worked full time in the family stores until about 1989, when she relinquished her day-to-day role. She obtained her real estate license in 1986, and began to intensify her real estate sales activities.
She enjoyed substantial earnings over the years. A few years ago, she resumed nursing work. She now works 24 hours per week and earns $348 per week gross, $305 per week net. She will obtain health insurance soon.
The wife was the primary homemaker and caretaker for the children. Two of the children are college graduates. All went to private or parochial schools until recently. Most of their education was paid for through the wife's earnings. During some periods, she worked extensive overtime.
The long and short of it is that this marriage of about 27 years duration disintegrated largely because of the husband's slide into alcoholism, which he began in the early CT Page 1464-H 1980s. In 1986, he entered and completed an inpatient treatment program. He then participated in Alcoholics Anonymous, for about one and one-half years, and remained sober for about four years. He has resumed `moderate' drinking now. The parties separated in late 1992; the wife resides with the two children in the jointly-owned family home. The husband resides with his female companion and they presumably share household expenses. The marriage clearly is broken down irretrievably, and the major share of the responsibility for its destruction must rest with the husband.
Unfortunately, the disruption of this family has engendered a great deal of bitterness, anger and hostility between the parties. While they have chosen to litigate this case vigorously, spending funds, time and resources which could have been devoted to far better use, their son Edward is experiencing severe emotional problems. He does not do well at school, either academically or behaviorally, and the wife's inflexibility with respect to visitation and her outspoken expressions of anger directed at the husband, have adversely affected his relationship with the children. At the same time, CT Page 1464-I he has been strangely passive about his visitation with them. He cancelled about fifty (50%) percent of his scheduled visitation sessions and cut others short. He has made little effort since the parties' separation to involve himself in their lives.
I believe that the recommendation of Norma Damato, the family services officer is appropriate under these circumstances. It is substantially in accord with the recommendation of the children's attorney as to the younger child. With respect to the older child, he recommends a suspension of visitation. This recommendation the court declines to adopt, and expects the father to attend school and other functions in which the children are involved. With mediation through family services counseling as suggested, and a specific visitation schedule which the father should adhere to, I find father's visitation with both children, which is that recommended by Ms. Damato, to be in the children's best interests. In arriving at this conclusion, I have also considered the stated wishes and preferences of the children.
The parties' lack of communication and cooperation has CT Page 1464-J also been self destructive financially. They have made no concerted efforts to reorganize or refinance their indebtedness. They have submitted widely disparate valuations of two parcels of real estate, and strangely, have not supplied the court with real estate appraisals.
The three parcels of real estate owned in joint tenancy were acquired by dint of mutual efforts and funds. These are: the five-bedroom marital dwelling, 190 Old Canterbury Turnpike, Norwich, Connecticut, which I find has a value of $190,000, less a first mortgage of $57,995, leaving equity[3] of $132,005; the commercial real estate at 22 Town Street, Norwich, Connecticut, which I find has a value of $227,000, less first mortgage of $180,801, leaving equity of $46,199; a summer cottage known as No. 106 Mackin Drive, Griswold, Connecticut, has a value of $90,000, less first mortgage of $37,003, leaving equity of $52,997.
The husband acquired an undivided one-half interest in a single-family dwelling from his mother by way of gift via his sister, known as No. 21 Dunham Street, Norwich, Connecticut. CT Page 1464-K This interest has a value of $50,000. It has no mortgage.
The parties' other assets are modest in value and reported on their financial affidavits are as follows:
 Wife: ---- 1988 Cadillac, valued at $1,500; Household furniture and furnishings of 2,500; Savings of 13;
 Husband: ------- 1993 Cherokee automobile, valued by him at $17,000, less car loan of $11,500, leaving equity of $5,500 Life insurance with cash value of 3,000 A boat worth 1,200; Contents of the family home (his one-half interest) 11,000; Commercial fixtures at 22 Town Street, CT Page 1464-L Norwich, Connecticut unknown
In addition to these assets, the husband has approximately $2,500[4] due to him from his mother's estate and the parties have an uncashed State of Connecticut 1991 income tax refund check of $222. They also maintain, in a custodial capacity, accounts for their children.
Against these assets, the wife reports $83,692 in liabilities, which include approximately $18,000 of business trade creditors who hold judgment liens.
The husband reports $29,143 on his financial affidavit, which includes $12,000 he owes his sister. He is currently paying an unsecured loan with a balance of approximately $21,000, the so-called `overage loan',[5] which appears secured by an attachment. The sum of $22.10 per week is presently being garnished from the husband's pay by one of the lien creditors, Mathieu, and two others, Meyers and Barco are waiting "in line".
The judgment liens, federal tax and other liens on the CT Page 1464-M parties' properties appear to total, in the aggregate, about $70,000. The parties' total indebtedness, joint and several, exclusive of mortgages, approximates $130,000.
The parties have equal employability, significant vocational skills and earning capacity. The plaintiff appears to criticize the defendant for working part time and thus failing to fully exploit her earning capacity. She justifies this because of her children's needs, especially those of Edward. At the same time, the plaintiff devotes a large part of his time and effort in pursuing his VFW avocation, while neglecting his visitation with his children and the various tax liabilities.
Each of the parties has made substantial monetary contributions to the acquisition, preservation and appreciation in value of their respective estates; however, the wife has made a somewhat larger contribution, especially during the past few years. In addition, her nonmonetary contributions in caring for the household have been greater than his.
He plans to "do the chairs"[6] in the VFW organization, CT Page 1464-N aspiring to be national commander; this is a prestigious position, but no evidence was introduced as to his anticipated salary and perquisites.
I have considered all of the evidence and the facts found in the light of all of the criteria in General Statutes §§ 46b-81, 46b-82 and 46b-84 in the determination of the financial awards set forth. I have also considered the tax consequences of the awards.
Accordingly, judgment shall enter as follows:
(1) The marriage is dissolved on the ground of irretrievable breakdown.
(2) The parties shall have joint legal custody of the minor children, as they have agreed; primary physical custody shall be with mother. Father shall have reasonable rights of visitation as follows: Mondays from 5:30 p. m. to 8:00 p. m. and one Saturday or Sunday a month from 10:00 a.m. to 7:00 p. m. Father shall provide his VFW travel schedule and female CT Page 1464-O companion's work schedule[7] to mother, from which the appropriate Saturday or Sunday each month may be selected. In the event father is required to be away on VFW affairs on any Monday, he may select another day during that week not in conflict with the children's prearranged activities, at least two weeks prior. He shall not consume alcohol for at least eight hours prior to or during said visitations. The parties may seek mediation through family services to work on expanded visitation during summer and other school vacation periods.
(3) The father shall pay as child support the sum of $180 per week, which I find to be the presumptive guidelines amount, to be secured by immediate wage garnishment. The guidelines worksheet submitted by father shows $158.40 per week, as the suggested child support obligation, but his calculation does not include his catering income. The wife suggests in her proposed orders that the husband pay $310 per week total support; she provides no basis in the guidelines for this amount, nor points to any credible evidence that would furnish justification for this substantial deviation from the guidelines. Each parent shall have one dependency exemption CT Page 1464-P for income tax purposes; when the oldest child may no longer be claimed, then the parties shall alternate the younger child, with the mother taking the child the first year. The father may claim the child for the applicable year only if he is current with his child support obligations at the end of said year. The parents shall support their children pursuant to 1994 Public Acts, No. 94-61(b) (now § 46b-84(b)).
(4) The defendant mother shall maintain health insurance for the benefit of the children when available through her employment. The father shall pay $16 per week toward the premium. The parties shall equally share any unreimbursed or uncovered health expenses for their children. An order pursuant to § 46b-84(d) (formerly § 46b-84(c)) shall enter.
(5) The defendant wife shall take, have and own the following real and personal property, which is assigned to her, free of husband's claims, except as later set forth:
(a) 190 Old Canterbury Turnpike, Norwich, Connecticut; CT Page 1464-Q
(b) 22 Town Street, Norwich, Connecticut;
(c) A 1988 Cadillac automobile;
(d) The tangible personal property now in her possession, including the contents of the real estate described in (a) and (b) above;
(e) The State of Connecticut income tax refund check;
(f) Her bank accounts;
She shall pay the first mortgages and real estate taxes on said real estate and indemnify and save the plaintiff harmless therefrom.
(6) The plaintiff husband shall take, have and own, free of the wife's claims, the following real and personal property, which is assigned to him:
(a) 106 Mackin Drive, Griswold, Connecticut; CT Page 1464-R
(b) 21 Dunham Street, Norwich, Connecticut;
(c) His 1993 Cherokee automobile and boat;
(d) The tangible personal property in his possession;
(e) The interest in his mother's estate and the cash value in his life insurance policy.
He shall pay the first mortgage and real estate taxes on the above real estate and indemnify and save harmless the defendant wife therefrom.
(7) The liabilities of the parties are allocated as follows, and each shall indemnify and save harmless the other from the liabilities so allocated:
(a) Wife shall be obligated to pay:
her VISA card; CT Page 1464-S her MBNA Mastercard; her CPA bill of $385; her 1992 IRS and Connecticut state income tax liabilities shown on her financial affidavit; and, one half of the IRS 941 liabilities in the approximate amount of $2,805; the real estate taxes due for 22 Town Street, Norwich, Connecticut, 1988 list; the Norwich Savings Society `overage loan'; the Congress Talcott Corporation and Topps Manufacturing Company judgment liens; one half of the CPA bill in the approximate amount of $2,835; and the Coffey bill. She shall be responsible for the return of the tenant's security deposit.
(b) Husband shall pay the following:
 Optima and Mastercard; student loans; Jewett City Trust Company; CT Page 1464-T SNET Company; Dr. Isa; and the debt to his sister, all as shown on his affidavit; the 1990 IRS income tax liability in the approximate amount of $18,534; one half of the IRS 941 liabilities in the approximate amount of $2,805; the IRS liabilities of $1,612 and $526 for 1991 and 1993; and the following business creditors: Meyer Plastics, Barco, and Mathieu Insurance Company. He shall also pay the Greenwood Trust bill; the other indebtedness (in the approximate amount of $7,000) to Norwich Savings Society; the Backus Hospital bill and the other half of the CPA bill in the approximate amount of $2,835.
Each party shall use due diligence and their best efforts to pay said creditors and obtain releases of liens which affect upon the other's property. The husband shall pay not CT Page 1464-U less than $500 per month toward the indebtedness and shall apply the balance due him from his mother's estate towards the IRS liens, as soon as received by him.
(8) The wife shall execute and deliver to the husband a promissory note in the amount of $9,500 without interest, secured by mortgage on the Town Street and Canterbury Turnpike properties. Said note and mortgage shall be due and payable on or before the first of the following: her death or remarriage, the sale of both properties; or November 17, 2003. Said note and mortgage shall provide for interest at the rate of ten (10%) percent per annum and attorney's fees in the event of default. The wife shall be entitled to a partial release of said mortgage as to either property upon the payment to husband of $4,750.
Said note and mortgage shall be automatically subordinated to any refinancing by wife for any of the following purposes: consolidation of indebtedness, securing a lower interest rate or to secure funds for the minor children's college education.
In the event husband does not satisfy the obligations CT Page 1464-V set out in paragraph 7(b) above, any portion thereof that the wife pays may be offset against the balance of said note and mortgage.
(9) Each party shall pay his or her attorney's fees.
(10) Each party shall maintain the children's custodial accounts without impairment, for the benefit of the children.
(11) Each parent shall maintain the life insurance policies shown on their respective financial affidavits, with the minor children as irrevocable beneficiaries; upon the older child reaching 19, the younger shall be the sole beneficiary, until she reaches 19, excepting that effective upon the older child's 19th birthday, the wife shall be irrevocable beneficiary of one half of the husband's Pioneer Mutual Insurance Company life insurance policy until the husband has fully satisfied all of the indebtedness allocated to him under paragraph 7(b). Each shall execute and deliver an authorization to the other so that the other may obtain, from time to time, information relating to CT Page 1464-W the status of said policy or policies.
(12) The husband shall pay to the wife the sum of $1 per year alimony, until the death of either party, her remarriage, or November 17, 2002. Said alimony may only be modifiable by wife in the event husband fails to pay his portion of the liabilities set forth herein, or if the wife is unable to work as a result of physical or mental disability, and shall be otherwise nonmodifiable as to amount or duration.
(13) The parties shall each pay to the children's attorney, Lorenzo J. Cicchiello, Esq., the sum of $1,215, in equal monthly payments of $75 commencing April 1, 1995, until paid. The court finds his fee in the amount of $2,430 reasonable.
(14) All documents of title and other instruments necessary or incidental to the effectuation of these orders shall be completed and exchanged within thirty (30) days hereof. The title to the real estate set out to the parties is hereby assigned to and vested in said parties pursuant to General CT Page 1464-X Statutes § 46b-81.
Teller, J.